UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

AARON T. GEE,

            Petitioner,           2:12-cv-02071-AA

             v.               ORDER

MARK NOOTH,

            Respondent.

AIKEN, District Judge.

    Petitioner is an inmate in the custody of the Oregon Department of Corrections, pursuant to two judgments. Only the convictions related to Multnomah County Case No. 050432200 are challenged in this proceeding. In that case, petitioner was convicted by a jury for four counts of Robbery in the First Degree, four counts of Robbery in the Second Degree, one count of Burglary in the First Degree, and two counts of Assault in the Second Degree, and sentenced to a total of 270 months imprisonment.

    Petitioner directly appealed his convictions, but the

Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. Exhibits 107 - 113. Petitioner filed a petition for post-conviction relief, but the Marion County Circuit Court denied relief, the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. Exhibits 133-137.

Petitioner filed a petition under 28 U.S.C. § 2254, alleging eight grounds for relief (with sub-parts). Petition (#2) p. 7-14.

Respondent moves to deny relief on the grounds that petitioner procedurally defaulted some of his claims and that the other claims were denied in state court decisions that are entitled to deference by this court and are correct on the merits. Response (#24) p. 2.

Under 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus "shall not be granted" unless "the applicant has exhausted the remedies available in the courts of the State[.]" Exhaustion occurs when a petitioner has given the state courts a "full and fair" opportunity to consider and resolve all federal claims. Keeney v. Tomayo-Reyes, 504 U.S. 1, 10 (1992). If a petitioner can present a claim to the state's Supreme Court, he must do so to properly exhaust that claim. O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999).

To "fairly present" a federal claim in state court,

habeas petitioners must "include reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief." Gray v. Netherland, 518 U.S. 152, 162-63 (1996).; see also, Castillo v. McFadden, 399 F.3d 993, 1000 (9th Cir. 2005); see also, Insyxiengmay v. Morgan, 403 F.3d 657, 668 (9th Cir. 2005) ("In [the Ninth Circuit], a petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law."); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999) (per curiam) (holding that, when a petitioner failed to cite federal case law or mention the federal constitution in his state court briefing, he did not alert the state court to the federal nature of his claims).

Furthermore, to properly exhaust a claim the petitioner must present the federal claim to the state courts in a procedural context in which the claims' merits will be considered. Castille v. Peoples, 489 U.S. 346, 351-52 (1989); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1984; Turner v. Compoy, 827 F.2d 526, 529 (9th Cir. 1987), cert. denied, 489 U.S. 1059 (1989).

If a petitioner has failed to present a federal constitutional claim to the state's highest court (i.e., has failed to exhaust state remedies) and can no longer do so

because of a procedural bar, that claim is procedurally defaulted. <u>Boerckel</u>, 526 U.S. at 848, citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991). Once a petitioner has procedurally defaulted a claim, federal habeas corpus review is barred unless the petitioner can demonstrate: (1) cause for the procedural default, and (2) actual prejudice from the failure. <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000), <u>Coleman</u>, 501 U.S. at 750; <u>see also</u>, Wainwright <u>v. Sykes</u>, 433 U.S. 72 (1977); <u>Murray v. Carrier</u>, 477 U.S. 748 (1986); <u>Hughes v. Idaho Bd. of Corr.</u>, 800 F.2d 905 (9th Cir. 1986).

Cause for a procedural default exists only if petitioners "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." <u>Murray</u>, 477 U.S. at 488. Prejudice exists only if petitioners show that the procedural default "worked to [petitioner's] actual and substantial disadvantage." <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982). Demonstrating a mere possibility of prejudice is insufficient. <u>Id</u>.

Procedural defaults may also be excused by demonstrating a "fundamental miscarriage of justice." <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000). To establish the fundamental miscarriage of justice exception to the exhaustion requirement requires a showing of actual innocence. <u>Schlup v. Delo</u>, 513

U.S. 298, 329 (1995); <u>Calderon v. Thompson</u>, 523 U.S.538, 559 (1998).

In Ground Seven (1), petitioner alleges that his trial counsel failed to adequately investigate the facts and circumstances underlying counts 3 and 5 of the re-indictment. Specifically, petitioner alleges that counsel should have established that Ramon Sims and Ramar were the same person.

Petitioner alleged this claim in his Amended Petition for Post-conviction Relief. Exhibit 115, p. 5. However, he did not pursue this claim in his post conviction appeal to the Oregon Court of Appeals or the Oregon Supreme Court.

Petitioner is now barred under Oregon law from filing any additional appeals or PCR proceedings,[1] and thus cannot "fairly present" Ground Seven (1) to Oregon's highest court. Therefore, the claim is procedurally defaulted. Petitioner has not established any cause or prejudice for his procedural default or that he is entitled to the fundamental miscarriage of justice exception to the exhaustion requirement. Therefore, petitioner claim in Ground Seven (1) is denied.

---

[1]ORS 138.071 requires that direct appeals be filed not later than 30 days after the judgment or order appealed from was entered in the register. ORS 138.650 requires PCR appeals to be filed within 30 days after the entry of final judgment. ORS 2.520 requires petitions for review to Oregon's Supreme Court to be filed within 35 days from the date of the Court of Appeals' decision. *See also* ORAP 9.05(2) (same) Finally, ORS 138.550(3) provides that all PCR claims must be asserted in the original or amended petition unless they could not reasonably have been asserted therein, and any claims not so asserted are deemed waived.

Petitioner alleges in Grounds One through Six that the trial court erred when it denied his motion for judgment of acquittal on counts 3, 5, 8, 10 and 15.

Petitioner moved for judgment of acquittal on counts 3, 5, 8, 10 and 15 arguing that there was insufficient evidence presented to establish that the victims "Ramar" and Ramon Sims were separate victims. Petitioner also argued that there was insufficient evidence to establish that either Ramar or Ramon Sims were actually robbed. Exhibit 106, p. 186 - 195. The motion made to the trial court did not reference any federal law.[2] The trial court denied the motions. *Id.*

Petitioner alleged similar claims on appeal. Exhibit 107, p. 5 - 6, and for the first time, petitioner included a reference to Jackson v. Virginia, 442 U.S. 307 (1979) and In re Winship, 397 U.S. 358 (1970). Exhibit 107, p. 14, 20.

In Oregon, the requirement that a criminal conviction be based on sufficient evidence is provided by statute. *See*, ORS 136.445. However, in reviewing the sufficiency of the evidence pursuant to ORS 136.445, "Oregon has adopted the identical standard as that set forth by the Supreme Court in Jackson v. Virginia,." Lacy v. Belleque, 2010 WL3866719, *2-4

---

[2]Petitioner's petition in this proceeding also fails to allege any federal basis for his claim in Grounds One - Six, and therefore fails to state a claim. However, this defect could be cured by amendment and I find that it is appropriate to address the claims on the merits.

6 - ORDER

(D. Or. Sept. 21 2010), *affirmed*, Lacy v. Nooth, 2011 WL 2601333 (9th Cir. July 1, 2011) (unpublished opinion).

In Sanders v. Ryder, 342 F.3d 991 (9th Cir. 2003), the Ninth Circuit concluded that a *pro se* petitioner exhausted state remedies by presenting a state-law claim that was "identical" to its federal counterpart.

However, neither the Ninth Circuit or the Supreme Court has resolved the question of whether a petitioner, who is represented by counsel, exhausts state court remedies by making a state-law claim that incorporates the same standard as an analogous federal-law claim. *See*, Baldwin v. Reese, 541 U.S. 27, 34 (2994) (declining to address the issue); Peterson v. Lampert, 319 F.3d 1153, 1160 (9th Cir. 2003) (same). District courts within the Ninth Circuit have reached different conclusions when addressing this issue. *See*, Wieland Thompson, 2013 WL 550504, *3 (D. Or., Feb. 12, 2013).

Assuming *arguendo* that petitioner's Grounds One through Six were fairly presented to the Oregon courts as federal issues, they were denied in decisions that are correct on the merits and entitled to deference by this court for the reasons set forth below.

Under the Antiterrorism and Effective Death Penalty Act of 1966 (AEDPA), habeas corpus relief may "not be granted with respect to any claim that was adjudicated on the merits in

state court proceedings," unless the adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2.) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented at the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has explained that in passing the AEDPA, Congress intended to change the habeas corpus field by curbing delays, preventing "re-trials" on federal habeas, and giving effect to state convictions to the extent permissible under the law. Williams v. Taylor, 529 U.S. 362, 404 (2000). In addressing the deference requirements set forth in 28 U.S.C. § 2244(d)(1), the Court specifically found that the "contrary to" and "unreasonable application" clauses of the AEDPA have independent meanings. Id.

In Lockyer v. Andrade, 538 U.S. 63 (2003) the Supreme Court held that "a state court decision is 'contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" Andrade, 538 U.S. at 73. (citations omitted).

The Court further held that "under the 'unreasonable

application clause,' a federal habeas court may grant the writ
if the state court identifies the correct governing legal
principle from this Court's decisions but unreasonably applies
that principle to the facts of the prisoner's case.  The
'unreasonable application' clause requires the state court
decision to be more than incorrect or erroneous.  The state
court's application of the clearly established law must be
objectively unreasonable." <u>Andrade</u>, 538 U.S. at 75.

The <u>Andrade</u> court further clarified that under 28 U.S.C.
§ 2254(d) a state court's decision is not necessarily
"objectively unreasonable" even if it is "clear error."  "It
is not enough that a federal habeas court, in its independent
review of the legal question' is left with a 'firm conviction'
that the state court was erroneous.  We have held precisely
the opposite: Under § 2254(d)(1)'s 'unreasonable application'
clause, then, a federal habeas court may not issue the writ
simply because that court concludes in its independent
judgment that the relevant state-court decision applied
clearly established federal law erroneously or incorrectly.
Rather that application must be objectively unreasonable."
<u>Andrade</u>, 538 U.S. at 75-76.

It is not an "objectively unreasonable application of
clearly established federal law" for a state court to decline
to apply a specific legal rule that has not been squarely

established by the Supreme Court. Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

Even incorrect state-court decisions must be given deference, unless they are "contrary to" or "objectively unreasonable" applications of a Supreme Court holding. This is true even if the state courts do not fully articulate their reasoning. Delgado v. Lewis, 223 F.3d 976. 982 (9th Cir. 2000) ["federal court review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of the controlling federal law."].

Finally, under 28 U.S.C. § 2254(d)(2), "factual determinations by a state court are presumed to be correct absent clear and convincing evidence to the contrary." Miller -el v. Cockrell, 537 U.S. 322, 340 (2003). The AEDPA thus sets out a "highly deferential standard for evaluating state court rulings," which requires that state court decisions be given the benefit of the doubt. Woodford v. Visciotti, 537 U.S. 19 (2003) (per curiam), quoting Lindh v. Murphey, 521 U.S. 320, 333 n. 7 (1997).

The standard for reviewing sufficiency of the evidence claims is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 324; *see also*, <u>Winship</u>, 397 U.S. at 364. In this case, the trial court's denial of petitioner's motions were not unreasonable applications of the *Winship* and *Jackson* standards for sufficiency of the evidence.

In support of the argument that Ramon Sims and "Ramar" were discreet individuals, the prosecution presented evidence from the victim McClendon whose basement was robbed that twice indicated that Ramon and Ramar were two different people. First the prosecution ask the witness to write down the names of the people present at the time of the robbery.  The list included "Ramon" and "Ramar."  In response to the prosecutor's further question as to whether Ramon was Ramon Sims, the witness responded affirmatively.  When asked if he knew Ramar's last name, the witness responded, "Shit, hell if I know." Exhibit 106 at 72.

A different witness' testimony can also be interpreted as indicating that Ramar and Ramon Sims were different people:

[PROSECUTION]: Was Ramar there?

[MITCHELL]: Yea.

[PROSECUTION] Ramon Sims?

[Mitchell]: Yea.

Exhibit 106, at 46.

I find that a reasonable fact-finder could reasonably conclude from this testimony that Ramar and Ramon Sims were different people.

Robbery involves the use or threatened use of force "in the course of committing or attempting to commit theft or the unauthorized use of a vehicle." ORS 164.395.

The state court finding that the jury could reasonably conclude that both Ramar and Ramon Sims were threatened with the use of force was supported by evidence that a group of people entered a basement studio. Petitioner had a gun and ordered people to empty their pockets. Exhibit 106, at 49-50, 74. Petitioner struck two separate victims in the face with the gun and fired a shot. Exhibit 106, at 50-51, 54-57, 74-76, 81-82, 107-108, 145, 140-150.

Under these circumstances, a jury could reasonably conclude that *everyone* present was implicitly threatened with the use of force, even if the gun was never pointed directly at them. The jury could also infer from this testimony that petitioner and his accomplice either stole items from everyone present in the basement or attempted to do so.

The state court findings concerning the sufficiency of the evidence are not an unreasonable application of the *Jackson* sufficiency of the evidence standard.

Based on the foregoing I find that the trial court's

denial of the motions for acquittal were not an unreasonable application of the *Jackson* sufficiency of the evidence standard. The decisions are entitled to deference by this court and are correct on the merits. Petitioner's claims in Grounds One through Six are denied.

In Grounds Seven (2) - Seven (6) petitioner alleges claims of ineffective assistance of counsel. In Ground Seven (7) petitioner alleges that his appellate counsel was ineffective.

"[I]t is past question that the rule set forth in Strickland, qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams v Taylor, supra at 391. Under Williams, a petitioner may therefore be granted habeas corpus relief on a claim of ineffective assistance of counsel only if the decision of the state court was contrary to, or an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984).

Under Strickland, a claim that counsel's assistance was so ineffective as to require reversal of a conviction has two components. First, the petitioner must show that counsel's performance was deficient; second, the petitioner must show that the deficient performance prejudiced the defense. Id. at 687.

The first prong of the Strickland test required the petitioner to demonstrate that "counsel's representation fell

below an objective standard of reasonableness.  <u>Strickland</u>, <u>supra</u> at 688.  The second component of the test requires the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>., at 694.  A "reasonable probability" is one that is sufficient to undermine confidence in the outcome." <u>Id</u>.

In <u>Bell v. Cone</u>, 535 U.S. 685 (2002), the Court reiterated that when considering ineffective assistance of counsel claims:

> [J]udicial scrutiny of a counsel's performance must be highly deferential and that every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Thus, even when a court is presented with an ineffective-assistance claim not subject to § 2254(d)(1) deference, a defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

<u>Bell</u>, 535 U.S. at 695 (citations and quotations marks omitted).

When considering ineffective assistance of counsel claims under 28 U.S.C. § 2254(d), "it is the habeas applicant's burden to show that the state court applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner." <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002) (*per curiam*).

The general nature of the *Strickland* test combined with the deference prescribed by § 2254(d) combines to require the federal

14 - ORDER

court not to evaluate the state court's determination itself, but whether the state court's determination was unreasonable.  <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009) (citing <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007).

In Ground Seven (2) petitioner alleges that his trial counsel was deficient for failing to move to suppress exhibits 6, 7 and 8 - photographic lineups.

The PCR court found:

> First, petitioner must prove, but has not proven, that such a motion would have had legal merit because the lineups were not unnecessarily suggestive.  Second, trial counsel provided effective assistance of counsel by throughly cross-examining the witnesses about the validity of the lineups.  Third, even if the lineups were suggestive, they did not cause prejudice because the jury heard overwhelming evidence identifying petitioner through two witnesses who already knew him personally before he committed the crime.

Exhibit 113, at 7.

To prevail on a post-conviction claim that counsel should have filed a motion, a petitioner must demonstrate that the motion would have been successful.  <u>Kimmelman v. Morrison</u>, 447 U.S. 365, 375 (1969).

In this case, petitioner did not present the photo throw-down to the PCR court.[3] Therefore, petitioner failed to demonstrate that a motion to suppress the throw-down as unduly suggestive would have been successful.

---

[3]Petitioner's PCR counsel attempted to obtain the photo lineup throw-down but it was no longer available.

15 - ORDER

In addition, the evidence before the PCR court was that counsel exercised a reasonable strategic decision in determining not to file a motion to suppress because counsel believed that petitioner was not identified by the throw-down but rather identified by victims and co-defendants. *See*, Exhibit 127, at 2.

Under these circumstances petitioner failed to establish that a reasonable trial counsel would have moved to suppress the exhibits or that such a motion would have been successful.

Petitioner has not submitted any clear and convincing evidence to controvert the PCR court finding that petitioner was identified by witnesses and co-defendants.    Therefore, that finding is presumed to be correct.    Under these circumstances, the PCR court finding that the failure to suppress the photographic evidence did not prejudice petitioner is supported by the record.

Petitioner alleges in Ground Seven (3) that his trial counsel was deficient for presenting testimony from Officer Halpin that allegedly inferred the mug-shots used in the photo throw-down were from a prior arrest.

The PCR court rejected this claim stating: "Since petitioner was on trial for committing crimes, a natural inference could be that if it was a mug shot of petitioner, it was the mug shot taken when he was arrested for these crimes. The trial record does not reference any of petitioner's previous arrests, so there was no reason for the jury to suspect based on this single statement, that

petitioner had previous arrests."

The PCR court finding is supported by the record. Petitioner's argument that the jury would make such an inference is not supported by facts or logic.

In Ground Seven (4) petitioner alleges that his trial counsel was deficient for failing to move for mistrial during the testimony of Robert Neal.

Neal was asked if he identified petitioner to Detective Halpin as one of the individuals in the basement. Neal stated: "I heard that from somewhere later after the robbery." Defense counsel made a hearsay objection which was overruled.

Petitioner did not explain to the post-conviction court why a motion for mistrial would have been allowed.   Reasonable counsel could have concluded - as did the post-conviction court - that a motion for mistrial would have been futile in light of the court's ruling on the hearsay objection.

In Grounds Seven (5) and (6) petitioner alleges that his counsel failed to move for mistrial when the prosecutor discussed the tension, drama, and hostility in the courtroom and noted that it is "easy to get caught up in that drama and forget what we're actually here about."

Petitioner argues that the comment constituted an "inappropriate comment on petitioner's courtroom demeanor and was designed to inflame the passions of the jury against petitioner."

The PCR court found that petitioner failed to establish that a motion for mistrial would have been allowed under the circumstances. The court found that it would be "logical to conclude that [reluctant witnesses] caused the tension in the courtroom" and that remarks about such tension would not inflame the jury's passions "because they correctly referred to what had happened at trial." Exhibit 133, at 11.

A prosecutor does not violate a defendant's rights "by pointing out the obvious to the jury." State v. McNeely, 330 Or. 457, 465 (2000) cert. den. 121 S.Ct. 663 (2000). In this case the prosecutor simply commented on the hostility and tension that was readily apparent to the jurors. I agree with the PCR court conclusion that petitioner failed to meet his burden of establishing that a motion for mistrial would have been granted and that counsel was deficient for failing to make such a motion.

In Ground Seven (6) petitioner argues that counsel was deficient for failing to move for mistrial during closing argument when the state made the following comment: "And what do we have before us to help you with that decision? What is uncontested? Our uncontested testimony is this. We know that Mr. Gee was in Mr. Burkett's basement."

Petitioner contends that this argument impermissibly shifts the burden of proof to petitioner and constitutes a comment on his right to remain silent.

The PCR court made detailed findings rejecting this claim. *See* Exhibit 131, at 11-13. I agree with the PCR court's conclusion that the evidence before the court did not support a motion for mistrial.

Petitioner alleges in Ground Seven (7) that his counsel was deficient for failing to object to the imposition of consecutive sentences on the grounds that the evidence adduced at trial failed to establish that his actions caused qualitatively different harm to different victims as required under ORS 137.123, et seq.

The PCR court found that "[t]he trial court lawfully imposed consecutive sentences" based on petitioner's convictions of first degree robbery with a firearm against four separate victims. Exhibit 131, at 13.

The state post-conviction court's determination of state sentencing law is not subject to review in federal habeas corpus proceedings. *See*, Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Belmontes v. Brown, 414 F.3d 1094, 1121 (9th Cir. 2005), *overruled on other grounds* by Ayres v. Belmontes, 549 U.S. 7 (2006).

Thus, the state post-conviction court's finding that petitioner's sentence was lawful is binding on this court and petitioner cannot establish that counsel was ineffective for failing to challenge the sentence.

Moreover, the PCR court decision was correct as ORS 137.123(5)(b) permits consecutive sentences for separate victims.

In Ground Eight, petitioner alleges that his appellate counsel failed to raise an error on appeal regarding the trial court's ruling on counsel's objection and motion to strike the hearsay testimony of witness Robert Neal.

As discussed above the PCR court finding that the hearsay testimony of Robert Neal did not prejudice petitioner is supported by the record. Appellate counsel's assessment that the issue lacked merit and was harmless, was correct and the PCR court decision denying relief is entitled to deference.

Based on all of the foregoing, petitioner's Petition (#2) is denied. The Clerk of the Court is directed to enter a judgment dismissing this proceeding with prejudice.

## *Certificate of Appealability*

*Should petitioner appeal, a certificate of appealability is denied as petitioner has not made a substantial showing of the denial of a constitutional right. See, 28 U.S.C. § 2253(c)(2).*

DATED this 3rd day of December~~November~~, 2013.

Ann Aiken
United State District Judge

20 - ORDER